**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:17-CR-96** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **GERMAINE D. HILL (1),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Germaine D. Hill moves, through appointed counsel, for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 68).  Hill asks the court to reduce his sentence to time served based on his medical condition and his concern regarding potential spread of the COVID-19 virus[1] at the Schuylkill Federal Correctional Institution ("FCI Schuylkill") where he is currently incarcerated.  The government opposes compassionate release. For the reasons that follow, we will deny Hill's motion.

## I.    Factual Background & Procedural History

A grand jury returned a one-count indictment (Doc. 1) against Hill in April 2017.  The indictment charged Hill with being a felon in possession of a firearm and ammunition—specifically, a 9mm Taurus pistol and seven rounds of Wolf ammunition—in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).  (See id.)  Hill

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2."  *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORG., https://www.who.int/ emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it.  We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

subsequently notified the court, through counsel, of his intent to plead guilty without a written plea agreement.  (See Doc. 35).  The court accepted Hill's guilty plea on August 14, 2017.  (See Doc. 43).

The presentence report assigned Hill a base offense level of 24 pursuant to Guidelines Section 2K2.1(a)(2) because Hill committed the instant offense after sustaining two prior felony controlled-substance convictions.  (PSR ¶ 13).  With a three-level reduction for acceptance of responsibility, Hill's adjusted offense level was 21.  (See id. ¶¶ 20-21, 22).  The report calculated a total criminal history score of seven, resulting in a criminal history category of IV and a Guidelines imprisonment range of 57 to 71 months.  (See id. ¶¶ 29, 64).  Hill objected to paragraph 27 of the presentence report, which assigned one criminal history point for a 2016 conviction for harassment.  (Doc. 51-2 at 2-7).

The case proceeded to sentencing on December 19, 2017.  The court sustained Hill's objection and reduced his criminal history score to six, his criminal history category to III, and his Guidelines range to 46 to 57 months.  (Doc. 66 at 1).  After balancing the salient Section 3553(a) factors, the court imposed a Guidelines sentence of 55 months' imprisonment.  (See Doc. 65).  Hill is currently housed at FCI Schuylkill, with a projected release date of March 18, 2021.  See Find an Inmate, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "11680-067") (last visited Aug. 3, 2020).

On April 24, 2020, Hill wrote the warden at FCI Schuylkill and asked the warden to consider seeking compassionate release on his behalf.  (Doc. 70-2 at 1-3).  Five days later, Hill filed a pro se motion asking this court to appoint counsel to

assist him in seeking compassionate release.  (See Doc. 68).  We granted Hill's

request and appointed the Federal Public Defender to determine whether Hill may

be eligible for such relief and, if so, to file any appropriate motion or briefing on his

behalf.  (Doc. 69).  In the interim, the warden denied Hill's April 24 request.  (Doc.

70-2 at 4-5).

On June 29, appointed counsel filed a brief seeking compassionate release

on Hill's behalf.  (Doc. 70).  We construed Hill's request for counsel and counsel's

supporting brief as a motion for compassionate release and promptly implemented

an expedited briefing schedule, (see Doc. 71).  Hill's motion is now fully briefed and

ripe for review.  (See Docs. 70, 75, 79).

## II.   <u>Discussion</u>

Hill asks the court to reduce his sentence to time served pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub.

L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing

court to reduce a term of imprisonment if the court finds, after consideration of the

Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can

move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A).

But before a defendant can move the court directly, he must either "fully exhaust[]

all administrative rights to appeal a failure of the [BOP] to bring a motion on [his]

behalf" or wait for 30 days to lapse from the warden's receipt of a request that the

BOP file such a motion.  Id.  The warden denied Hill's April 24 request to bring

a motion on his behalf within 30 days of receiving it.  (See Doc. 70-2 at 1-5).  The

government does not assert that Hill has failed to properly exhaust administrative

remedies.  (See Doc. 75 at 12).  We will therefore turn to the merits of Hill's motion.[2]

---

[2] We disagree with the suggestion that a prisoner satisfies Section 3582(c)(1)(A)'s's exhaustion requirement by simply waiting 30 days after submitting a request to the warden to file a motion in the sentencing court.  We have previously held that, if a warden responds to a request to bring a motion for compassionate release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C. § 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner "must fully exhaust the warden's denial within the BOP" before we can entertain his motion  See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases).  It is unclear whether Hill's rejected attempt to appeal within the BOP would constitute "full[]" exhaustion as contemplated by the statute.  (See Doc. 70-2 at 6-7); see also 18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases); Petrossi, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa. Apr. 14, 2020).  We have held that judges cannot waive this exhaustion requirement.  See Petrossi, 2020 WL 1865758, at *3-4.  And courts are divided on whether the requirement is jurisdictional in nature, such that the government could not waive it either.  Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, __ F. Supp. 3d __, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer, No. 18-CR-00783-2, __ F. Supp. 3d __, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6, 2020) (same); United States v. Haney, No. 19-CR-541, __ F. Supp. 3d __, 2020 WL 1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No. 3:12-CR-00115-RCJ, __ F. Supp. 3d __, 2020 WL 2857500, at *3-5 (D. Nev. June 2, 2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441, __ F. Supp. 3d __, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same).  Although not specifically raised by the parties, we have a continuing obligation to consider questions of subject-matter jurisdiction sua sponte.  See Fort Bend County v. Davis, 587 U.S. __, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)).  However, we need not resolve the jurisdictional question in this case.  Assuming jurisdiction arguendo, Hill has not established that a reduction under Section 3582(c)(1)(A)(i) is warranted.  See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005) (citing, inter alia, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and concluding that when a jurisdictional limitation "has a statutory provenance," rather than a constitutional one, courts may assume jurisdiction arguendo).

### A.     Extraordinary and Compelling Reasons

Hill contends that his medical condition and resulting vulnerability to serious complications from COVID-19 establish extraordinary and compelling reasons to grant compassionate release.  Hill avers that he has diagnoses of Type 2 diabetes and arthritis and that he has a history of hyperlipidemia.  (See Doc. 70 at 1, 4-5).  He asserts that his medical condition may place him at higher risk for severe illness from COVID-19, that this risk is amplified in the prison setting, and that immediate release is the only way to guard against this risk and protect his health. (See id. at 1-2, 6-7).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3]  See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

one from which the defendant "is not expected to recover."  Id. at cmt. n.1(A)(i),
(A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if
he is 65 or older, is experiencing "serious deterioration in physical or mental health
because of the aging process," and has served the lesser of 10 years or 75 percent of
his term of imprisonment.  Id. at cmt. n.1(B).  The Application Note closes with a
catchall, authorizing a reduction when the Director of the BOP identifies in a
particular case "an extraordinary or compelling reason other than, or in
combination with," the above.  Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner
requests for compassionate release.  Of the many considerations identified in the
BOP's policy statement, the only criteria potentially applicable to Hill are those
concerning prisoners with a "debilitated medical condition."  FED. BUREAU OF
PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION
IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G)
at 5 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  The
statement provides that compassionate release should be considered for prisoners
"who have an incurable, progressive illness or who have suffered a debilitating
injury from which they will not recover."  Id.  Specifically, the BOP will consider
compassionate release if a prisoner is "[c]ompletely disabled, meaning the
[prisoner] cannot carry on any self-care and is totally confined to a bed or chair;
or [c]apable of only limited self-care and is confined to a bed or chair more than
50% of waking hours."  Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria.  Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions.  In <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread."  <u>Raia</u>, 954 F.3d at 597.[4]  Over the past few months, district courts in the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for habeas relief or for pretrial release.  <u>See</u> <u>Ndir v. Doll</u>, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); <u>D.M. v. Barr</u>, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); <u>United States v. Anderson</u>, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context).  In other words, something more is required.

---

[4] The Third Circuit in <u>Raia</u> held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile.  <u>See</u> <u>Raia</u>, 954 F.3d at 596-97.  Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*.  We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

Hill asserts that his medical condition and the presence of the COVID-19 virus within FCI Schuylkill supply the requisite "something more."  There is no indication in current guidance from the Centers for Disease Control and Prevention ("CDC") that arthritis or hyperlipidemia increase one's risk of severe illness from COVID-19.  See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 30, 2020).  While Type 1 and Type 2 diabetes are included in the CDC's higher-risk (or potentially higher-risk) categories, see id., Hill's diagnosis of prediabetes is not,[5] see Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc. gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Even if we were to assume for the sake of argument that Hill's medical condition does increase his risk to COVID-19, the threat within his institution is minimal.  Hill is correct when he notes that there has been an "explosion of COVID-19 cases in prisons across the country."  (Doc. 70 at 4-5).  Several prisons have experienced outbreaks, and, tragically, 106 prisoner deaths have been recorded to

---

[5] Counsel for Hill suggests that Hill is presently diabetic.  (Doc. 70 at 4 ("He suffers from diabetes and takes daily medication.")).  We have reviewed the 90-page medical file in its entirety.  While the records reveal that Hill has a history of Type 2 diabetes, (see Doc. 73 at 2, 8; Doc. 77 at 42), they now list that condition as "Resolved – 01/23/2020," (Doc. 77 at 18; see id. at 42).  We also find no evidence that Hill takes (or has ever taken) daily medication for diabetes.  Hill's medication summary lists just one current prescription—fluoxetine, for impulse disorder—and previous prescriptions for acetaminophen, ibuprofen, and penicillin.  (Doc. 77 at 47).  A note from September 6, 2019, states that Hill's diabetes was then "diet-controlled" and he was "taking no meds."  (Id. at 24).

date.  <u>See</u> *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/ coronavirus/ (select "Full breakdown and additional details") (last updated Aug. 3, 2020, 3:00 p.m.).  But nationwide figures are not representative of circumstances at individual prisons.  The BOP reports only one positive prisoner at FCI Schuylkill. <u>See</u> <u>id.</u>  According to the government, this individual self-surrendered to FCI Schuylkill on June 29, 2020; informed prison staff that he had recently tested positive for the COVID-19 virus; and was immediately placed in medical isolation. (<u>See</u> Doc. 75 at 7 n.1).  Thus, he has had no contact with other prisoners.  (<u>Id.</u>)  The BOP further reports that 163 prisoners at FCI Schuylkill have tested negative, with two tests still pending.  <u>See</u> *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks.  It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services.  <u>See</u> *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov /coronavirus/covid19_status.jsp (last visited Aug. 3, 2020).  Prisoner movement between facilities has been "suspended with limited exceptions."  <u>Id.</u>  Movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  <u>See</u> <u>id.</u>  The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)— recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain

vulnerable prisoners to home confinement. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. The BOP reports that it has increased use of home confinement significantly, releasing an additional 7,282 prisoners in the past four months. Id. We therefore have no objective basis to find that Hill is at imminent risk of being exposed to or contracting the COVID-19 virus.

We also have no reason to believe that the BOP cannot adequately treat Hill's medical conditions. The government has submitted Hill's entire medical file from his tenure in the federal prison system. (Doc. 77). A review of those records reveals that, even with current pandemic-related restrictions, he is regularly seen by prison medical staff, (see generally id. at 1-27), and bloodwork is taken quarterly to monitor his A1C levels and other health markers, (see id. at 67-81). There is simply no support for the intimation that the BOP is not equipped to treat Hill or has been inadequately treating him so far.

The information available to the court suggests that the BOP is cognizant of and attentive to Hill's medical needs, that there is not a strong likelihood that he will be exposed to the COVID-19 virus at FCI Schuylkill, and that the BOP is working hard to prevent such exposure from happening. On these facts, we cannot conclude that the presence of the COVID-19 virus at FCI Schuylkill—whether on its own or in combination with Hill's medical condition—is an "extraordinary and compelling" reason for release.

**B.      Section 3553(a) Factors**

Even if we were to agree that extraordinary and compelling circumstances

exist, our analysis must still be informed by the Section 3553(a) factors,[6] and any

reduction must be "consistent with applicable policy statements issued by the

Sentencing Commission."  See 18 U.S.C. § 3582(c)(1)(A); see also United States

v. Pawlowski, No. 20-2033, ___ F.3d ___, 2020 WL 4281503, at *2 & n.6 (3d Cir. June

26, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).  Hill has a projected release date of

March 18, 2021, and approximately nine months remaining on his 55-month

sentence.[7]

Hill's conduct in this case was serious: he was found in possession of a

loaded handgun as well as a cut straw with white residue that tested positive for

cocaine, and he admitted to officers that he was "very high and had been snorting

cocaine all day."  (PSR ¶ 5).  At sentencing, we acknowledged as mitigating factors

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of
the offense and the history and characteristics of the defendant"; (2) "the need
for the sentence imposed . . . to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; . . . to afford
adequate deterrence to criminal conduct; . . . to protect the public from further
crimes of the defendant; and . . . to provide the defendant with needed educational
and vocational training, medical care, or other correctional treatment in the most
effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence
and sentencing range recommended by the United States Sentencing Guidelines;
(5) pertinent policy statements issued by the United States Sentencing Commission;
(6) "the need to avoid unwarranted sentencing disparities" among similarly situated
defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

[7] Hill's counsel states that Hill has "served . . . approximately 100 months out
of 151 total."  (Doc. 70 at 7).  It is unclear where these figures come from.  Hill was
sentenced to just 55 months, not 151, (Doc. 65), and he has been incarcerated for
approximately 39 months since being detained in April 2017, (see Doc. 45 at 1).

Hill's difficult childhood and his drug addiction, both of which played a role in putting him on a criminal path. (Sent. Tr. 37:14-23). We noted that the principal aggravating factor in our sentencing calculus was the risk of recidivism, given the escalating and sometimes violent nature of Hill's criminal conduct and his history of violating parole and supervised release. (Id. at 37:7-13, 37:24-5). His criminal record includes a 2003 federal conviction and 10-year sentence for discharging a firearm in furtherance of a crime of violence (during which offense a discharged bullet nearly struck a 6-year-old child) and a 2016 state conviction for assaulting and threatening to shoot the mother of his youngest child. (See PSR ¶¶ 27-28). While we also noted some optimism in light of Hill's allocution and family support, we found a sentence at the high end of the Guidelines range to be necessary to reflect the seriousness of the offense, protect the public, afford adequate deterrence, and provide Hill with the full panoply of rehabilitative and vocational programming offered by the BOP. (See Sent. Tr. 37:18-23, 38:15-39:1).

It appears that Hill has been taking advantage of some of those opportunities, (see Doc. 70-3 at 1-2), and we hope that he will continue to do so. They are vital to achieving the rehabilitative goals of sentencing and reducing Hill's likelihood of recidivism. See 18 U.S.C. § 3553(a)(2)(B), (D). Prison medical records also suggest, however, that Hill continues to struggle with controlled-substance abuse even while incarcerated. A March 2020 clinical encounter summary states that Hill "admits to vaping about 5 strips per day of K2 . . . start[ing] about the time of the super bowl," (Doc. 77 at 10), and an April 2020 clinical encounter summary states that he "reports . . . using THC regularly prior to Super Bowl at which time he started using K2,"

(<u>id.</u>)  Hill has also been disciplined on several occasions, most recently for

swallowing contraband on March 19, 2020.  (<u>See</u> Doc. 75-1 at 1).  For all of these

reasons, the Section 3553(a) factors strongly militate in favor of leaving Hill's

existing sentence intact.

**III.   <u>Conclusion</u>**

  The court will deny Hill's motion (Doc. 68) for compassionate release and

reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  An appropriate order shall

issue.

       /S/ CHRISTOPHER C. CONNER
       Christopher C. Conner
       United States District Judge
       Middle District of Pennsylvania

Dated: August 4, 2020